WILLIAM J. HOPPIN, Guardian, *v.* Executors of SAMUEL BOYD TOBEY and others.

A deed from a principal to his agent, the consideration of which is the execution by the agent of his antecedent duty, will generally be held void by a court of equity.

T. having been entrusted for a considerable time, by the mother of J., with the care and management of her estate and of that of her children, and having executed after her decease the duties of executor of her will, and acted as guardian of her children during their minority, was constituted by J., upon his coming of age, his attorney, to have the general care and supervision of all his property of every kind, by a letter of attorney authorizing him "generally to do and perform all acts, matters and things relative to said property and estate," as fully as said J. might do. While occupying said position as attorney, and exercising the authority conferred upon him by the aforesaid instrument, J. executed to him a deed of certain real estate, purporting, on its face, to be made for the consideration of ten dollars in money and the further consideration of T.'s past services. The deed was never put on record, but was found by T.'s executors among his papers, upon his decease, some three years afterwards. *Held,* that though there was no suggestion of any fraud or impo-

Hoppin, guardian, *v.* Tobey and others.

sition, or even of any designed excess of any influence acquired by the relation existing between J. and T. to procure the deed, or that it was not freely made by the grantee, yet, under the strict rule of a court of equity, the deed *ought* not to stand.

BILL IN EQUITY, brought by William Jones Hoppin, guardian of the person and estate of Moses B. Jenkins, against the executors, widow and heirs of Samuel Boyd Tobey, deceased, praying that a conveyance from said Jenkins to said Tobey of certain real estate, executed by the former during the lifetime of the latter, might be set aside.

The facts of the case are fully stated in the opinion of the court.

*Ashley,* with whom was *Payne,* for the complainant, contended that the taking of the conveyance was, at least, a " constructive fraud " upon the grantor, and could not be sustained as "purporting to be bounty for the execution of antecedent duty," citing Story's Eq. Jur. § § 308, 311, 312, 314, 315, 319, 322, 323 ; Hill on Trustees, (side paging) 157, 158 ; *Augnenon* v. *Baseley,* Lead. Cases in Equity (side paging), 406, and notes and cases there cited; Greenfield's Estate, 14 Penn. St. R. 489 ; *Welles* v. *Middleton,* 2 Cox, Ch. R. 112 ; *Gibson* v. *Jeyes,* 6 Vesey, 266 ; *Hatch* v. *Hatch,* 9 Vesey, 292.

*Tobey for respondents.*

BRAYTON, C. J.    The substantial allegations of the bill, admitted by the answers, are, that the grantee in the deed now sought to be set aside had been, by the mother of the grantor, Moses B. Jenkins, entrusted with the care and management of her estate and property, and the property of her children.    That she had reposed great trust and confidence in the said Tobey, and the same feeling and regard for and towards him had been communicated to and inculcated in the said children ; that the relation continued till the death of the mother, in November, 1849, leaving two children, a daughter of the age of 18 years, and the said Moses, of the age of 14 years.

That in and by her last will and testament, the grantee was appointed sole executor thereof ; that he accepted that trust, and performed its duties ; that he was also appointed by said will

guardian of the persons and estates of her said children, and was pointed out in said will as their friend and adviser; that he acted as such guardian during their minority,—of the daughter until her majority, and of the said Moses until February, 1856, when he arrived at full age. That upon arriving at full age, the daughter, by an instrument in writing, continued the said Tobey in the care and management of her estates, and the same feeling of trust and confidence was continued on her part during her majority, and down to the time of the execution of the deed by said Moses, and after. That the said Moses, on his arriving at full age, by an instrument in writing, constituted said Tobey his attorney, to have the general care and supervision of all his property and estate of every kind, to collect and receive rent and income, to pay therefrom all expenses for repairs, insurance, taxes, and for such additions and improvements as he might think it *expedient to make;* to pay a portion of the income to said Moses, and to invest the balance, and proceeds of any sales he might make, in such manner as he might think most *conducive to the interest* of said Moses; to sell and convey or to lease for such term, and upon such conditions as he might think proper, any portions of said estate; to draw, accept and endorse bills of exchange, drafts, checks or promissory notes and mercantile paper that might be required, and generally to do and perform all acts, matters and things relative to said property and estates, as fully as said Moses might do. That by means of the position and relation held and occupied by said Tobey towards the family, and the appointment and trust conferred upon him and the confidence thus reposed in him by the mother, the sister, and the said Moses; from the powers vested in him as executor and guardian; and by means of the said instrument of attorney and the authority and power exercised in and about the estate and affairs of the said Moses; said Tobey had obtained and exercised during all the time and until said conveyance was executed, great influence and control over the mind and proceedings of the said Moses.

It is further alleged, and admitted by the answers, that while occupying the position of attorney as aforesaid of said Moses,

and exercising the authorities conferred upon him by the letter of attorney, and acting as the attorney and confidential adviser, agent and friend of the said Moses, the deed was drawn up, signed and acknowledged by the said Moses, purporting to convey the estate therein described, valued at $10,000, and purporting to be for the consideration of $10 in money and the further consideration of past services. That said deed was made and executed under such influence, and by means of the power and influence thus acquired by said Tobey, and that all past services had been fully paid before the execution of said deed, and furnished no part of the consideration, and that no money was paid.

The pleadings show the existence of peculiar confidential relations subsisting between the parties to this deed, which bring the case within that class of cases treated under the head of constructive frauds, and which arise from this relation of trust and confidence where that trust is not faithfully discharged, and becomes the instrument of gain to the party who has acquired it.

This class of cases comprehends the relation of trustee and *cestui que trust,* of guardian and ward, of attorney and client, of principal and agent, and no less also of all persons standing in the situation of quasi guardians or confidential advisers, and every one who has entered into a fiduciary relation, or assumed an obligation, by contract or otherwise towards another, which it would be a breach of trust and confidence to violate.

All transactions between persons standing in any of these relations, are scanned in a court of equity with a most searching and questioning suspicion, and where the relation of guardian and ward, or trustee in the nature of guardian, exists, it is said that a court is extremely watchful to prevent the guardian taking any advantage at the time of his ward coming of age, or of delivering up the trust, because an undue advantage might be taken. It will not give an opportunity to do so either by flattery or force.

The court proceeds upon the ground of public utility, and referring to the instance of a reward given to an attorney pending the suit, a chancellor has said, all depends upon public utility, and therefore the court will not permit it, though in this particular instance there may not be any unfairness, but the court has

established that a public utility makes it a necessity, and on this principle of humanity, that it is a debt of humanity that one owes to another, as every man is liable to be in the same circumstances. Lord Eldon, in *Hatch* v. *Hatch*, 9 Vesey, 297, observed that where a trustee had done his duty, there might be no more moral act, or one more creditable to a young man, (at the expiration of the trust,) if he, taking it into his fair, serious, and well informed consideration, were to do an act of bounty like this. But the court cannot permit it, except when quite satisfied that the act is of that nature, considering that the inquiry whether it is an act of rational consideration and of pure volition, is in a court of justice so easily baffled, and the difficulty of getting property out of the hands of a trustee or guardian thus increased, and therefore, he reasons, if the court did not watch these transactions with a jealousy almost invincible, in a great majority of cases it would lend its assistance to fraud ; where the connexion is not dissolved, everything remaining pressing upon the mind of the party under the care of the guardian or trustee.

Many cases are accompanied by deceit or imposition, or attended with marks of positive fraud and design to reap an advantage, but these circumstances are not held necessary to the relief, and thus the court proceeds upon the principle of general public policy, and will interfere when there is no actual design to defraud or overreach or impose upon the party.

Wherever confidence is reposed, the principle of the court requires that it shall be faithfully acted upon, and preserved from every degree of imposition, and the influence acquired kept free from any taint of selfish purposes, and restrained at all times to purposes of good faith and personal good.

In *Gibson* v. *Jeyes*, 6 Vesey, 267, where the relation of the parties was that of attorney and client, it was held that he who bargains in matters of advantage with a person placing confidence in him, is bound to show that a reasonable use has been made of that confidence, and that the clear duty results from the rule of the court, and throws the whole onus of the case upon him. That if he will mix with the character of attorney that of vendor, he shall, if the propriety of the transaction come in

question, manifest that he has given all that reasonable advice against himself that he would have given her against a third person.

In *Huguenin* v. *Baseley*, 14 Vesey, 273, where the defendant, having the entire confidence of the plaintiff, had assumed, with her consent, to manage, and was managing, her property and business in his discretion, and the plaintiff made a voluntary settlement upon him and his family, the chancellor, proceeding upon the same general principle of public policy, and holding the onus to be upon the defendant, propounded this question : " Whether the plaintiff executed the instrument not only voluntarily, but with all that knowledge of all its effect, nature and consequences which, the defendant Baseley and his counsel were bound by their duty to communicate to her before she was allowed to execute it." " The question is not," said he, " whether she knew what she was doing, had done, or proposed to do, but how the intention was produced, whether all that care and providence were placed around her as against those who advised her, which, from their situation and relation with respect to her, they were bound to exert in her behalf."

In *Cray* v. *Mansfield*, 1 Vesey, Sen. 379, the defendant had been steward of the father, and afterwards receiver of the estate of the son, an infant, and who, on arriving at full age, executed to him a deed of gift. The chancellor said there was no ground to set it aside for actual fraud or imposition. Yet was it imprudent and dangerous to be suffered that the person who is to take the benefit of the grant, and who had that relation with the party, should not have advised the plaintiff to have laid the deed before some common friend or third person.

In *Griffiths* v. *Robins*, 3 Mad. Ch. 191, the plaintiff, an aged lady, was dependent for kindness upon the defendants. They had assumed to show her that kindness, and to care for her and her affairs, and she put entire confidence in them. While that relation subsisted, she made the voluntary deed in question, and the language of the court is : " They stood in a relation to her which so much exposed her to their influence, that they can maintain no deed of gift from her *unless* they can establish that

it was the result of her own free will, and effected by the intervention of some indifferent person." * * * " It is sufficient to say that they have not made out the case which the policy of the law requires from persons in that relation to the donor in which they had placed themselves."

Lord Eldon, upon another occasion, uses this language : " The language of a court of justice has at all times been, if a man does not choose to act upon the confidence appearing in the course of the transaction to be placed in him, he ought to reject it as soon as proposed."

There is another case, of *Welles* v. *Middleton*, 1 Cox. 113. In this case the plaintiff had become heir to a large estate. The defendants were attornies, and volunteered to assist him in receiving his inheritance and to manage his estate. He was content that they should. They were distantly related to him. He executed to them a conveyance of a great portion of his estate.

There was no ground for saying that the plaintiff was incompetent, or not capable to make such an instrument unimpeachable at law or in equity, had the circumstances been such as the principles of a court of equity would have permitted. There was no pretences of any fraud or imposition. The defendants were to manage everything for him. He had entire confidence. He made the deed deliberately, expressed himself satisfied with what had been done, so the court say. And yet the chancellor says, the question is, if this be a sort of transaction which it is possible for a court of equity, consistently with its rules and principles, and the landmarks of its authority for ages together, to admit of standing ? And referring to a gift intended as compensation for past services, Lord Eldon, in *Hatch* v. *Hatch*, 9 Ves. 297, uses this strong language : " It is almost impossible, in the course of the connexion of guardian and ward, attorney and client, trustee and cestui que trust, that a transaction shall stand, purporting to be a bounty for the execution of an antecedent duty."

The deed was drawn by direction of the grantee. It was brought to him when drawn. It was then executed, not at the motion of the grantor, but at the suggestion of the grantee that

the deed was ready for execution if he now thought proper to sign it.

Indeed, it seems from the fact that the deed was not recorded, and from the expression of the grantee that he did not know as he should have it recorded, as it might be that the condition of Jenkins' estate might not warrant it, that the grantee did not feel that he could have advised the making of such a deed, but rather would have advised otherwise against a third person.

The allegations in this bill and the admissions in the answers show, that the parties to the deed had been for years, and from the early years of the grantor, standing in a confidential relation, in which the grantor had been induced to give, and had given, his confidence to the grantee, and had a right to look to him for advice and direction, one in which the grantee had undertaken and assumed the office of friend and adviser, and it is admitted that this intimate relation continued to the time when this deed was executed. That the grantor was then under the influence of that relation, and this deed might have been the result of that confidence and influence. There is nothing in the case to show that it was not; that the grantor had been in any way advised against the grantee, or that any indifferent person had been consulted. And though there is no suggestion of any fraud or imposition, of even of any designed exercise of any influence acquired by the relation existing, to procure this deed, or that it was not freely made by the grantor, yet in the light of the cases to which we have referred, and the strict rule of a court of equity, we are obliged to say that this deed ought not to stand.

*Decree for complainants, that the deed be delivered up to be cancelled.*